## COMMONWEALTH *vs.* JOSE RAFAEL BURGOS FRIAS.

No. 00-P-800.

Essex. October 24, 2001. - January 4, 2002.

Present: ARMSTRONG, C.J., GRASSO, & BERRY, JJ.

*Practice, Criminal,* Sentence, Assistance of counsel. *Imprisonment,* Credit for time served. *Extradition and Rendition. Uniform Criminal Extradition Act.*

Discussion of the guiding principles regarding a criminal defendant's entitlement to Massachusetts jail time credits for pretrial custody in a foreign jurisdiction and analysis of the extra-jurisdictional rendition procedures under the Uniform Criminal Extradition Act. [489-493]

This court concluded that, in circumstances in which a criminal defendant is detained in pretrial custody in a foreign State and, at some point, elects to execute a waiver of extradition under the Uniform Criminal Extradition Act (UCEA), the award of Massachusetts jail time credits on the subject offenses committed in Massachusetts commences on the date of the defendant's signing of the extradition waiver pursuant to the foreign State's UCEA provision that corresponds to G. L. c. 276, § 20J. [493-495]

A criminal defendant who was arrested on a fugitive warrant outside of Massachusetts, but who did not elect to waive extradition until a later date, thereby requiring both Massachusetts and the foreign State to undertake procedures to effect rendition under the Uniform Criminal Extradition Act, was entitled to jail time credits beyond those credited at sentencing only for the period from November 20, 1995, the date he executed the waiver of extradition, to December 4, 1995, the date he was returned to the custody of the Massachusetts State police, a period of fourteen days. [495]

On appeal of the denial of a motion for a new trial, a criminal defendant's claims of ineffective assistance of counsel were either expressly addressed on a prior direct appeal; part of the analysis in the direct appeal, but not briefed in this appeal and deemed waived; or failed due to an insufficient showing that a substantial defense had been lost. [495-496]

INDICTMENT found and returned in the Superior Court Department on December 20, 1989.

Following the decision of this court in 47 Mass. App. Ct. 293 (1999), motions to receive jail credit and for a new trial were considered by *Barbara J. Rouse,* J.

*Jose Rafael Burgos Frias,* pro se.

*Daniel I. Smulow*, Assistant District Attorney, for the Commonwealth.

BERRY, J. This case presents the issue of the date when jail time credits begin to accrue for pretrial confinement in a foreign State where a defendant is arrested on a fugitive warrant outside of Massachusetts, but does not elect to waive extradition until a later date, thereby requiring both the Commonwealth and the foreign State to undertake procedures to effect rendition under the Uniform Criminal Extradition Act (UCEA). We hold that the award of Massachusetts jail time credits commences on the date of the defendant's signing of the extradition waiver.

The defendant appeals the denial of his motion seeking forty-one additional days in good time credits for the time he was held in Rhode Island following his arrest on a fugitive warrant. He also appeals the denial of a motion for a new trial. We affirm the latter ruling. With respect to the motion for time served credits, we vacate the order denying any additional credits and remand to the trial court for entry of an appropriate order consistent with this opinion granting fourteen additional days of jail time credits.

1. *Facts and procedural history.* The defendant was indicted on December 20, 1989, for trafficking in cocaine. G. L. c. 94C, § 32E(*b*)(4). On May 30, 1990, he failed to appear at a pretrial hearing, and a default entered. On October 4, 1995, the defendant was arrested in Rhode Island on a fugitive warrant. On November 20, 1995, he signed a waiver of extradition. On December 4, 1995, he was returned to the custody of the Massachusetts State police. On September 16, 1996, a jury returned a guilty verdict, and on October 24, 1996, the defendant was sentenced to from fifteen years to fifteen years and one day to serve at M.C.I., Cedar Junction. At the time of sentencing, the defendant was credited with 345 days jail time in Massachusetts.

The defendant filed a direct appeal from the conviction. The conviction was affirmed. *Commonwealth* v. *Frias*, 47 Mass. App. Ct. 293 (1999). After that appeal, the defendant filed the two motions that are the subject of this appeal.

2. *Jail time credits.* The defendant asserts that he is entitled

to an additional forty-one days of jail time credits for the time of his confinement in Rhode Island.[1]

Pursuant to statute, pretrial detention time, in most instances, is credited toward the ultimate sentence, upon a plea of guilty or when sentence is imposed after trial. *Commonwealth* v. *Milton*, 427 Mass. 18, 23-24 (1998). See G. L. c. 279, § 33A. See also G. L. c. 127, § 129B. There is, however, no Massachusetts statute that governs the award of jail time credits for pretrial custody in a foreign State, where a defendant is arrested on a fugitive warrant on a Massachusetts offense. "In cases involving credit to be given for time served elsewhere, '[w]here no statute controls, we have been establishing guiding principles, case by case . . . .' " *Commonwealth* v. *Beauchamp*, 413 Mass. 60, 62 (1992), quoting from *Chalifoux* v. *Commissioner of Correction*, 375 Mass. 424, 428 (1978). In the development of such guiding principles, it has been held that, so long as custody in the foreign State is attributable to the Massachusetts charges, jail time credits may be awarded. See *Commonwealth* v. *Aquafresca*, 11 Mass. App. Ct. 975, 976-977 (1981); *Commonwealth* v. *Boland*, 43 Mass. App. Ct. 451, 456 (1997). However, a defendant's entitlement to Massachusetts jail time credits for such pretrial custody in a foreign jurisdiction and the number of days of jail time credits depends upon whether and when a defendant elects to execute a waiver of extradition, or, alternatively, elects to contest extradition.[2] The determination of jail time credits in these circumstances, in turn, involves analysis of the extra-jurisdictional rendition procedures under the UCEA[3]

---

[1]In his original motion, the defendant requested sixty-one days of jail time credits from the date of his arrest on the fugitive warrant to the date that he was returned to the custody of the Massachusetts State police. In the brief to this court, the defendant stated that was in error, and he modified the request for jail time credits to forty-one days, marked from the date of his arrest on October 4, 1995, to November 14, 1995. The reason for the later date is unclear.

[2]See, e.g., *Commonwealth* v. *Beauchamp*, 413 Mass. at 62 (no credit for time contesting extradition in State and Federal habeas corpus proceedings). Accord *Commonwealth* v. *Araujo*, 41 Mass. App. Ct. 928, 929 (1996).

[3]The Uniform Criminal Extradition Act (UCEA) provides "uniform and effective procedure[s] for States to request and perform the interstate rendition of parties charged with crimes." *Commonwealth* v. *Hinnant*, 424 Mass. 900,

and the various points at which a defendant may elect to execute a waiver of extradition or to contest rendition.

Pursuant to the UCEA, a defendant sought on criminal charges or having fled bail in one State ("demanding State") may be arrested on a fugitive warrant in another State ("asylum State").[4] See R.I. Gen. Laws 1956 § 12-9-16. See also G. L. c. 276, § 20A. See generally *Commonwealth* v. *Hinnant*, 424 Mass. 900 (1997). Upon arrest, the defendant must be brought for an initial appearance before a court in the asylum State ("initial appearance").[5] At this initial appearance, the defendant may elect to sign a waiver of extradition. R.I. Gen. Laws 1956, § 12-9-30. This is done "by executing or subscribing in the presence of a judge of any court of record a written statement of consent to return to the demanding state." *Ibid.* See G. L. c. 276, § 20J. If a defendant executes a waiver of extradition at the initial appearance, then jail time credits would begin to accrue as of that date.

If the defendant elects not to waive extradition at that point, the judge of the asylum State conducting the initial appearance hearing will either grant bail or commit the defendant to jail in the asylum State (here Rhode Island), "for the time specified in the warrant not to exceed thirty (30) days, to enable the arrest of the accused to be made under a warrant of the governor or on requisition of the executive authority of the state having jurisdiction of the offense . . . ." R.I. Gen. Laws 1956, § 12-9-18. See G. L. c. 276, § 20C. Stated another way and as applied to this case, since the defendant did not elect to waive extradi-

---

904 (1997). The UCEA has been adopted by forty-seven States, including Massachusetts and Rhode Island, as well as Puerto Rico and the Virgin Islands. See G. L. c. 276, §§ 11-20R; R.I. Gen. Laws 1956, §§ 12-9-1 to 12-9-35.

[4]The precise language of the UCEA as adopted varies from State to State. Because the applicable law under which the defendant was arrested is that of Rhode Island, the pertinent provisions of that State's statutes are quoted. However, the corresponding Massachusetts General Laws are also cited and, where pertinent, quoted.

[5]Rhode Island Gen. Laws 1956, § 12-9-16, provides that a defendant arrested on a fugitive warrant shall be brought before "any . . . judge or court available in or convenient to the place where the arrest may be made, to answer the charges or complaint and affidavit. A certified copy of the sworn charge or complaint and affidavit upon which the warrant is issued shall be attached to the warrant." See G. L. c. 276, § 20A.

tion at his initial court appearance, the Rhode Island judge would have committed him to custody in Rhode Island for thirty days to allow for Massachusetts law enforcement officials to undertake the procedures under the UCEA for the application and issuance of a warrant by the Governor of Massachusetts under our G. L. c. 276, §§ 20K, 20L.[6] Following the issuance of a Massachusetts Governor's warrant, further procedures would be required in the asylum State of Rhode Island as a predicate to the issuance of a rendition warrant by the Governor of that State. See R.I. Gen. Laws 1956, § 12-9-9. See also G. L. c. 276, § 16. Finally, even upon issuance of a rendition warrant by the Governor of Rhode Island, additional procedures would be required there before the defendant could be transported to Massachusetts. Specifically, a defendant must once again be brought before a judge of Rhode Island for a further hearing concerning the Governor's rendition warrant ("rendition hearing"). See R.I. Gen. Laws 1956, § 12-9-12.[7] See also G. L. c. 276, § 19.

At the rendition hearing, the UCEA requires that a judge of the asylum State inform the defendant of the warrant for his surrender to the demanding State, the underlying charge, the right to counsel, and the right to test the legality of the arrest

---

[6]The law enforcement agency seeking rendition in the demanding State (here Massachusetts) would then be required to prepare an application for the requisition for the return of the individual. G. L. c. 276, § 20L. When the Governor of the demanding State approves the application, a warrant demanding the return of the individual is issued. That warrant from the demanding State is sent to the Governor of the asylum State. G. L. c. 276, § 20K. Assuming that the Governor of the asylum State honors this demand, a rendition warrant is issued by the Governor of that State. See R.I. Gen. Laws 1956, § 12-9-9; G. L. c. 276, § 16.

[7]Rhode Island Gen. Laws 1956, § 12-9-12, provides in part:

"No person arrested upon a [Governor's] warrant issued under § 12-9-9 shall be delivered over to the agent appointed by the executive authority issuing the warrant unless that person is first and immediately brought before a judge of a court of record in this state, who shall inform the arrestee of the warrant and of the crime charged, and that he or she has the right to demand and procure legal counsel. If the prisoner or counsel states a desire to test the legality of the arrest, the judge of the court of record shall fix a reasonable time within which to apply for a writ of habeas corpus."

See G. L. c. 276, § 16.

under the rendition warrant in a habeas corpus proceeding. See R.I. Gen. Laws 1956, § 12-9-12. See also G. L. c. 276, § 19. The rendition hearing is thus another proceeding under the UCEA at which a defendant, having been advised of his rights, may elect either to waive extradition or to contest the rendition warrant by commencing a habeas corpus proceeding. If, at the rendition hearing, the defendant elects to execute a waiver of extradition, then jail time credits would begin to accrue as of that date. If the defendant elects to contest rendition, jail time credits do not accrue. See, e.g., *Commonwealth* v. *Beauchamp*, 413 Mass. at 62 (no credit for 1,574 days of custody in Illinois during which defendant challenged extradition in State and Federal habeas proceedings); *Commonwealth* v. *Araujo*, 41 Mass. App. Ct. at 929 (no credit for 170 days of New York imprisonment during which defendant contested rendition).

Against the backdrop of these UCEA procedures, differing points emerge at which a defendant may elect to waive extradition. These include at least two court proceedings — the initial appearance and the rendition hearing — at which the defendant, in the presence of a judge, may execute and subscribe to the extradition waiver. In addition, a defendant can, of course, at any point express his decision to waive extradition and request a court appearance to execute the UCEA waiver before a judge.

Given these different points on the time line of UCEA procedures, we hold that where a defendant is held in pretrial custody in a foreign State and elects at some point to execute a UCEA extradition waiver, the award of Massachusetts jail time credits on the subject Massachusetts offenses commences on the date of the defendant's signing of the extradition waiver[8,9] pursuant to the asylum State's UCEA provision that corresponds

---

[8]Where a defendant does not execute a waiver of extradition, the operative date for calculating jail time credits may be either (a) the date that the UCEA procedures are finalized and the defendant is delivered to the custody of Massachusetts authorities, see G. L. c. 276, § 19; or (b) the date the defendant's challenge to rendition is resolved. See *Araujo*, 41 Mass. App. Ct. at 929 (excluding jail credits for time rendition challenged, but crediting defendant with fourteen days spent in New York prison following resolution of his rendition challenge and prior to return to Massachusetts).

[9]An exception to applying the date of the extradition waiver would be where a defendant is able to demonstrate that he was unable to execute the

to G. L. c. 276, § 20J. Setting the date on which the waiver of extradition is signed as the mark for calculating jail time credits is consistent with principles of fairness which — in the absence of a statute governing jail credit for time held in foreign jurisdictions — have been judicially crafted, and guided by "principles of fairness and justice."[10] *Beauchamp*, 413 Mass. at 62, quoting from *Chalifoux*, 375 Mass. at 428.

Marking jail time credits from the point of the extradition waiver is appropriate and fair because, prior to the waiver, the time during which a defendant is being held in custody in the foreign jurisdiction is not directly attributable to the subject Massachusetts offenses. Rather, the continuing days of out-of-State custody are attributable to the defendant's failure to submit to the jurisdiction of Massachusetts to answer the subject offenses. Unless the defendant waives extradition, Massachusetts is required to undertake rendition procedures under the UCEA, with the attendant passage of time during which the defendant remains in confinement in the foreign jurisdiction. Thus, it is fair to mark time from that point because, in effect, the defendant holds the key to wind the clock to begin ticking the

waiver of extradition due to circumstances beyond his control. We recognize that, since an extradition waiver must be executed before a judge, it is not within a defendant's control to schedule when that court appearance will take place. In the event that there are scheduling difficulties or because other similar special circumstances cause delay in execution of the waiver, the defendant bears the burden of showing the reasons for the delay and demonstrating that the cause of the delay is not attributable to his conduct. Such a showing, in most cases, would require not only an affidavit, but also production of relevant docket entries from the Massachusetts courts and the courts of the asylum State and other pertinent information.

[10]Compare *Beauchamp*, 413 Mass. at 62 (fairness does not dictate awarding jail credit for time spent incarcerated in Illinois, while contesting rendition) and *Araujo*, 41 Mass. App. Ct. at 929 ("[c]onsiderations of fairness and equity do not require crediting [defendant] with time during which, by his own election [in contesting rendition], he ma[kes] himself unavailable for return to Massachusetts") with *Chalifoux*, 375 Mass. at 428 (fair that Massachusetts grant credit where transport delay attributable to State); *Aquafresca*, 11 Mass. App. Ct. at 977 (fairness required credit for time it reasonably took authorities to return the defendant to Massachusetts from Oregon, but no special considerations of fairness warranted credit for time served in Oregon jail on unrelated charges); and *Boland*, 43 Mass. App. Ct. at 456 (fairness dictates award of credit for time spent in custody on Massachusetts charge when Florida charges on which the defendant was simultaneously being held were dismissed).

count for jail time credits. As a matter of sound administration to ensure accurate record keeping for the calculation of jail credits for time held in a foreign jurisdiction, the date of signing of the extradition waiver before a judge provides a written entry of record, and use of this official record will lessen uncertainty and the prospect of error in the calculation of extrajurisdictional jail time credits.

Applying these principles to the instant case, we hold that the defendant is entitled to jail time credits beyond those recognized at sentencing only for the period from November 20, 1995, the date he executed the waiver of extradition,[11] to December 4, 1995, the day he was returned to the custody of the Massachusetts State police, a period of fourteen days.[12]

3. *The new trial motion.* In his motion for new trial, the defendant claimed his trial counsel rendered ineffective assistance and cited six issues. Four of the issues raised in the new trial motion were expressly addressed on direct appeal. *Frias*, 47 Mass. App. Ct. at 295-298. The fifth issue appears to be part of the analysis in the direct appeal, but in any event, has not been briefed in this appeal and is deemed waived.[13] Mass. R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). The new trial motion " 'may not be used as a vehicle to compel a trial judge to review and reconsider questions of law' on which a defendant has had his day in an appellate court, or forgone that opportunity." *Fogarty* v. *Commonwealth*, 406 Mass. 103, 107 (1989), quoting from *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 229 (1973).

As to the last issue referenced in the new trial motion — alleged ineffective assistance in the lawyer's misstatement as to

---

[11]We note that the record confirms that the defendant was arrested on a fugitive warrant in Rhode Island on October 4, 1995, but the record does not reflect what transpired from that date to the waiver signing on November 20, 1995. The defendant has not met his burden of demonstrating that there were special circumstances that prevented the signing of the waiver prior to November 20, 1995. See note 9, *supra.*

[12]The 345 days credited in the trial court appear to have included December 4, 1995.

[13]This issue is the defendant's contention that his attorney was ineffective for failing adequately to cross-examine prosecution witnesses. The defendant provides no details as to this claim. Defense counsel's cross-examination appears to have been discussed on direct appeal.

the applicable sentence — the judge found that the defendant failed to make a sufficient showing that he lost a substantial defense. The defendant's contention was based on a letter from his attorney that was written before the trial. The attorney's letter stated: "Your charge, as you know, carries a minimum mandatory penalty of 15 years, day for day, and not more than 20 years." That statement was not consistent with the State law then in effect because deductions for statutory and earned good time credits were applicable and would, if earned, reduce "day for day" the minimum term to be served.[14] As the judge found, however, the mistake caused no harm and made no difference as to the sentence imposed after trial, nor did it affect the defendant's decision whether to enter a guilty plea. The record is clear that the defendant was not interested in pursuing plea negotiations. As his attorney's letter stated at the time, "I haven't negotiated a plea in your case because you have always maintained that you don't want to plead guilty and that you want to go to trial. If you change your mind, let me know." The defendant offered nothing to show any change of mind.

The order denying the motion for new trial is affirmed. The order denying the motion for additional jail time credits is vacated and the case is remanded to the Superior Court for the addition of fourteen days to those credited at sentencing.

*So ordered.*

---

[14]Prior to a 1989 amendment, G. L. c. 94C, § 32H, rendered individuals convicted of certain drug offenses ineligible for " 'probation, parole, furlough, or work release' until they had served the mandatory minimum term of imprisonment." *Febonio* v. *Superintendent, Mass. Correctional Inst., Shirley,* 40 Mass. App. Ct. 933 (1996). In *Rodriguez* v. *Superintendent, Northeastern Correctional Center,* 24 Mass. App. Ct. 481, 485 (1987), this court held that § 32H did not prohibit the application of statutory good time credits pursuant to G. L. c. 127, § 129, even where such deductions allowed a prisoner to be discharged prior to serving the mandatory minimum term. Given the date of his offense, the defendant fell within the exception recognized in *Rodriguez.* Following *Rodriguez,* G. L. c. 94C, § 32H, was amended so that persons convicted of violating the drug laws involved would not receive statutory good time credits until after they had served the mandatory minimum term. See *Febonio, supra* at 933-934.