## LOUIS F. ROYCE, PETITIONER.

No. 88-P-912.

Suffolk. February 13, 1990. - March 20, 1990.

Present: WARNER, C.J., SMITH, & FINE, JJ.

*Practice, Criminal,* Sentence. *Imprisonment,* Escape. *Habeas Corpus.*

In the circumstances underlying a petition for declaratory relief wherein a State prisoner sought credit for service on a twelve-year (M.C.I.) Concord sentence imposed in 1971, from which he had escaped in 1973, and where a detainer had been filed only in 1986 even though the prisoner was recaptured in 1974 and was paroled from other concurrent sentences in 1980, "considerations of fairness" warranted allowing him credit toward service of the 1971 sentence from the date in 1982 on which the prisoner commenced an aggregate twenty-four to thirty-five year State prison sentence on unrelated charges. [401-403]

PETITION filed in the Superior Court Department on August 11, 1987.

The case was heard by *Elbert Tuttle,* J.

The case was submitted on briefs.

*Louis F. Royce,* pro se.

*James M. Shannon,* Attorney General, & *Marc C. Laredo,* Assistant Attorney General, for the respondent.

FINE, J. The issue on appeal is whether Louis F. Royce, a State prisoner, is entitled to credit towards service of a 1971 State prison sentence from which he escaped in 1973, or whether he must serve the time owed on that sentence upon the expiration of State prison sentences imposed for unrelated crimes in 1982. A detainer relating to Royce's obligation to serve the remainder of the 1971 sentence was first filed in 1986. There is no controlling statute. We are guided, therefore, by "considerations of fairness and a proper sense of justice." *Chalifoux* v. *Commissioner of Correction,* 375 Mass. 424, 427 (1978). We reach a result substantially simi-

lar to that of the trial judge, although our analysis is somewhat different. We therefore affirm the judgment insofar as it orders that Royce receive credit towards service of the 1971 sentence.

The following facts, which were before the judge, are undisputed. On October 23, 1970, in Suffolk Superior Court, Royce received three sentences of five years and a day and one sentence of ten years, all concurrent with each other, to M.C.I., Concord. On June 14, 1971, Royce received a fifteen-year sentence in Federal court. By order of the United States Attorney General, the Federal sentence was to be served at M.C.I., Concord, and would, therefore, run concurrently with the State sentences. On October 28, 1971, in Middlesex Superior Court, Royce received a twelve-year Concord sentence, to be served concurrently with all the other sentences.

On August 12, 1973, while serving the sentences, Royce escaped from a pre-release program at Mattapan State Hospital. He was apprehended in Maryland and taken to New Hampshire for trial in the United States District Court for· an offense committed subsequent to his escape. On July 18, 1974, the Federal District Court judge sentenced Royce to a ten-year prison term, to be served concurrently with his previous Federal sentence. He was committed to the Federal penitentiary in Lewisburg, Pennsylvania.

In 1977, the petitioner was charged in the West Roxbury District Court with the 1973 escape. As a result of the escape charge, a detainer was placed against him in the Federal system. However, the case was placed on file, and the detainer was removed at Royce's request. The escape charge was never tried.

In 1979; the Federal authorities sent Royce to Brook House, a halfway house located in Boston, and on January 22, 1980, he was paroled. No request was made for his return to Massachusetts custody, and he was released. For crimes committed after his release, Royce received the following sentences to M.C.I., Walpole: in Middlesex Superior Court on July 20, 1982, two concurrent sentences of nine to

fifteen years; in Bristol Superior Court on September 2, 1982, a sentence of six to eight years to be served concurrently with the previous State sentences; and, in Suffolk Superior Court, on December 21, 1982, a sentence of nine to fifteen years, and a from and after sentence of fifteen to twenty years, these last sentences to be served concurrently with the other State sentences. Thus, Royce is presently serving an aggregate twenty-four to thirty-five year State prison sentence.

In 1986, a detainer was lodged against Royce based on the 1971 twelve-year State prison sentence from which he had escaped thirteen years earlier. The detainer would require Royce to serve the balance of the 1971 sentence following completion of the sentences he is currently serving. Royce filed a petition in Superior Court for a writ of habeas corpus on August 11, 1987. As Royce was not then entitled to immediate release, even if his contentions were valid, the judge properly construed the petition as one for declaratory relief. See *Pina* v. *Superintendent, Mass. Correctional Inst., Walpole*, 376 Mass. 659, 665-666 (1978); *Hennessy* v. *Superintendent, Mass. Correctional Inst., Framingham*, 386 Mass. 848, 851 (1982).[1] He ruled that the portion of the 1971 sentence remaining after the escape was served from the time Royce was placed in Federal custody to serve the new Federal sentence. The judge allowed the petition and ordered that the detainer be removed from Royce's file and that Royce be deemed to have served the 1971 sentence in full. The judge reasoned, first, that, as Royce's original Federal sentence was to be served concurrently with his 1971 State sentence, the practical effect of the Federal judge's order that the new Federal sentence run concurrently with the first Federal sentence was to cause all three of the sentences to run concurrently. Second, believing that the original State

[1] Royce makes the contention on appeal, with which we do not agree, that the Commonwealth may not appeal from the judgment because the judge should have allowed his petition for a writ of habeas corpus. See *Averett, petitioner*, 404 Mass. 28, 32 (1989). Royce, however, did not appeal from the judge's decision construing the petition as one for declaratory relief.

and Federal charges arose out of the same occurrence, he regarded Royce as having been in constructive State custody while serving the concurrent Federal sentences.

The judge's first reason is of doubtful validity. At the time of Royce's 1974 Federal trial, a Federal judge had no authority to order a Federal sentence to run concurrently with a State sentence. *United States* v. *Segal*, 549 F.2d 1293, 1301 (9th Cir.), cert. denied, 431 U.S. 919 (1977). *United States* v. *Eastman*, 743 F.2d 1322, 1324 (9th Cir. 1984). At most, a Federal judge could recommend to the United States Attorney General, within whose authority it was to determine the place the sentence was to be served, 18 U.S.C. § 4082(a), (b) (1982) (repealed effective November 1, 1987), that the prisoner be ordered to serve the Federal sentence at a State facility, thus effectively causing the sentences to run concurrently. *United States* v. *Sackinger*, 704 F.2d 29, 30 (2d Cir. 1983). *United States* v. *Holmes*, 816 F.2d 420, 421 (8th Cir. 1987). The judge was also incorrect in assuming that the Federal and State charges were related.[2] We think, nevertheless, that Royce is entitled to relief on the ground that, at least since he has been serving his 1982 State prison sentences, he should be deemed to have been serving any unexpired portion of the 1971 State prison sentence.

Royce's escape in 1973 interrupted service of his 1971 State prison sentence. See *Dolan's Case*, 101 Mass. 219, 222 (1869); *Kinney, petitioner*, 5 Mass. App. Ct. 457, 459-460 (1977). For the reasons we have indicated, we are doubtful that Royce is entitled to credit towards service of that sentence for the time he was in Federal custody on Federal sentences for unrelated crimes. Contrast *Commonwealth* v. *Grant*, 366 Mass. 272 (1974). Thus, he remained an escapee from the State sentence until brought back within the custody of the Massachusetts Department of Correction. State authorities knew that Royce was in Federal prison and, if

---

[2]The first Federal charges arose from a bank robbery that took place in Rhode Island, whereas all of the State charges arose from events which took place within the Commonwealth.

reasonably alert, they could have taken custody of him to serve the interrupted portion of the 1971 sentence either upon his release on parole in 1980, or on any of the numerous occasions on which he was under arrest or in pretrial detention in Massachusetts for the subsequent offenses. We need not decide whether they were obligated to do so.

We think fairness requires that, at least from the time Royce was returned to the custody of the Massachusetts Department of Correction under the new State prison sentences, none of which was expressly imposed to be served from and after the unexpired portion of the 1971 State prison sentence, he be deemed to have been in custody on the sentence from which he escaped. Although, as an escapee, Royce's rights may have been limited, we think he had the right, at a minimum, to expect some reasonable degree of promptness in informing him of the Commonwealth's intention regarding service of the 1971 sentence. See *Chalifoux* v. *Commissioner of Correction*, 375 Mass. at 429. Failure to require that the Commonwealth act with reasonable promptness in such circumstances would serve to defeat the worthwhile goal of providing prison inmates and prison authorities with some level of certainty as to the likely period of confinement, and it would create the potential for arbitrariness and caprice.

The delay in filing the detainer until after Royce received the new State prison sentences was prejudicial. It deprived him of the opportunity to have the sentencing judges order the new sentences to be concurrent with the remaining portion of the 1971 sentence. Royce certainly cannot be faulted for failing to bring the matter up himself before the sentencing judges. Given the altogether confusing situation and the Commonwealth's inaction, he could not reasonably have been expected to know that he would be required to serve the remainder of the 1971 sentence.

The State prison authorities offer no explanation for their delay in filing the detainer until 1986. They contend, however, that to credit Royce for time served on the sentence from which he escaped would be to reward him for his escape. We do not so view the situation. In the first place, had

Royce not escaped, he would have wrapped up his 1971 State prison sentence concurrently with the 1971 Federal sentence which he has fully served. Moreover, Royce avoided punishment for the crime of escape because the Commonwealth declined to prosecute him. The Commonwealth also had the opportunity, which it missed, to request that the new State prison sentences be served from and after service of the unexpired portion of the 1971 State prison sentence. When sentences are not expressly ordered to be served consecutively, they are ordinarily regarded as concurrent. See *Henschel* v. *Commissioner of Correction*, 368 Mass. 130, 133 (1975); ABA Standards, Sentencing Alternatives & Procedures § 18-4.5(b)(iv) (Tent. Draft 1979). Believing that "fairness and a proper sense of justice," *Chalifoux* v. *Commissioner of Correction*, 375 Mass. at 427, calls for application of that principle in the circumstances of this case, we view what remained of the 1971 sentence to have merged in the new concurrent sentences Royce is presently serving.[3]

Royce, thus, is entitled to credit towards service of the 1971 sentence from July 20, 1982. Because it does not appear that the merged concurrent sentences have as yet been fully served, the order appealed from is amended by striking all the words following "time served" and substituting the

---

[3]We do not view *Kinney, petitioner*, 5 Mass. App. Ct. at 459-460, as requiring a different result. In that case, after an escape from State prison, Kinney was returned to the custody of the county sheriff on a new house of correction sentence. This court held that Kinney was not "serving" his original State prison sentence while he was serving his new sentence in the house of correction. In this case, on the other hand, the 1971 sentence and the new ones were all to State prison. The court in *Kinney* also cited two cases involving parole violators in which approval was given to the practice, now codified in G. L. c. 127, § 149, of having the parolee serve his entire new sentence before execution of the parole violation warrant activating the remainder of the original sentence. See *Zerbst* v. *Kidwell*, 304 U.S. 359 (1938); *Harding* v. *State Bd. of Parole*, 307 Mass. 217 (1940). However, the situation of an escapee, for present purposes, is different from that of a parolee who commits a new offense while on parole. An escape offers the opportunity not only for a from and after sentence for an offense committed while on escape, but also for separate punishment for the crime of escape.

words "on the October 28, 1971, twelve-year sentence from July 20, 1982." Otherwise, the judgment is affirmed.

*So ordered.*